WAGNER, J.
 

 This is an action to enjoin the superintendent and other staff employees of Cedarcrest Regional Hospital (Cedarcrest) from administering medication to the plaintiff, over his objection, for the treatment of mental illness, in nonemergency situations.
 
 *56
 
 The parties have filed a stipulation of facts, from which the following summary is drawn.
 

 Since December 6,1993, the plaintiff has been hospitalized at Cedarcrest, a facility for the treatment of mental illness, operated by the state department of mental health (department). The defendants, employees of the department, have administered long acting psychotropic medication to the plaintiff on at least three nonemergency occasions over his objection, with the consent of the plaintiffs conservator of the person. The plaintiffs conservator was appointed by the Hartford Probate Court on July 29, 1989, under what is now General Statutes § 45a-650, in an order that states that the plaintiff “is incapable of caring for himself ... by reason of physical and mental disabilities.” The written consent of the conservator indicated that he had met with the plaintiff, the plaintiffs physician and other members of the treatment team, reviewed the plaintiffs written record and considered the risks and benefits of the medication. It indicated further that the conservator was informed of the likelihood and seriousness of adverse side effects and had considered the plaintiffs preferences, religious views and prognosis with or without the medication.
 

 The plaintiff claims that under the provisions of Public Acts 1993, No. 93-369, which became effective on October 1, 1993, he may not forcibly be medicated in nonemergency situations without a hearing in the Probate Court to determine his competence to give informed consent to treatment with such drugs. He argues that in issuing the 1989 order, the Probate Court appointing his conservator did not sufficiently consider his competence to give such consent. The defendants argue that this law does not require the Probate Court to pass on the specific issue of the plaintiffs capacity
 
 *57
 
 to give or to withhold informed consent to such medication, and that they have conformed to the requirements of the statute.
 

 Public Acts No. 1993, No. 93-369, consists of four sections amending General Statutes §§ 17a-543, 17a-540,17a-541 and 17a-542 sequentially. The amendments to § 17a-543 are the most pertinent to the present case and are set forth in nine subsections.
 

 Subsection (a) of § 17a-543 provides that “[n]o patient shall receive medication for the treatment of the mental illness of such patient without the informed consent of such patient, except in accordance with procedures set forth in subsections (b), (d), (e) and (f) . . . .”
 

 Subsection (b) of § 17a-543 provides that “[n]o medical or surgical procedures may be performed without the patient’s written informed consent” or the written consent of a conservator appointed under § 45a-650, except in certain emergency situations.
 

 Subsection (d) of § 17a-543 provides for the establishment of an internal procedure by a mental health facility for the involuntary medication of inpatients in situations where the “condition of the patient will rapidly deteriorate,” such medication being limited to a period not exceeding thirty days.
 

 Subsection (e) of § 17a-543 provides: “If it is determined by the head of the hospital and two qualified physicians that a patient is incapable of giving informed consent to medication for the treatment of such patient’s mental illness and such medication is deemed to be necessary for such patient’s treatment, a facility may utilize the procedures established in subsection (d) of this section and may apply to the court of probate for appointment of a conservator of the person under section 45a-650. The conservator shall meet with the patient and the physician, review the patient’s written
 
 *58
 
 record and consider the risks and benefits from the medication, the likelihood and seriousness of adverse side effects, the preferences of the patient, the patient’s religious views, and the prognosis with and without medication. After consideration of such information, the conservator shall either consent to the patient receiving medication for the treatment of the patient’s mental illness or refuse to consent to the patient receiving such medication.”
 

 It has been argued that the consent of the conservator in the present case is sufficient authority for the hospital to administer psychotropic drugs to the plaintiff over his objection, since § 17a-543 (a) specifically lists § 17a-543 (b) as an exception and § 17a-543 (b) on its face provides that “medical or surgical procedures” may be performed with the written consent of a conservator who has been appointed under § 45a-650.
 

 This argument must be rejected for the following three reasons. First, § 17a-543 (b) refers to “medical or surgical procedures” only. This term falls short and does not include “medication for the treatment of a mental illness.” The phrase used in both subsections (a) and (b) of § 17a-543 prior to its amendment by Public Acts 1993, No. 93-369, was “medication and treatment,” which is a much broader term than “medical or surgical procedures,” but the former phrase was not retained in Public Acts 1993, No. 93-369. This would indicate a legislative intent not to include the medication for the treatment of mental illness within the term “medical or surgical procedures.”
 

 Second, the exceptions listed in subsection (a) of § 17a-543 and set forth in subsections (b), (d), (e) and (f) of that statute are in the conjunctive and not in the disjunctive. Subsection (a) of § 17a-543 cannot be operative with reference to § 17a-543 (b) alone, but must be interpreted together with the other subsections
 
 *59
 
 of § 17a-543 particularly (d) and (e). If § 17a-543 provides for a procedure for the appointment of a conservator under § 45a-650, and, thereafter, that conservator is required to meet the several conditions set forth in that subsection before he can validly consent to the administration to his ward of medication for mental illness, it would make no sense to permit a single consent under subsection (b) of § 17a-543. If this were sufficient, all of subsection (e) of § 17a-543 would be meaningless and have no effect.
 

 Third, if the procedure outlined in § 17a-543 (e) is mandatory on any conservator, it is obvious that in the procedure of applying for a conservator by a facility, either after, or without going through the procedure of § 17a-543 (d), the ward would have an opportunity to be heard in the Probate Court on the specific question of whether he is able to give informed consent. Indeed, in a situation where the Probate Court were to find that a ward was incapable of giving informed consent, the court’s order appointing the conservator might sensibly include a direct reference to the power of the conservator to give such consent.
 

 Public Acts 1993, No. 93-369, does not explicitly address the question at issue in the present case; namely, whether a person whose conservator has given consent is entitled to a further proceeding in the Probate Court to address the issue of that person’s competence to give consent to the administration of psychotropic medication for the treatment of mental illness. The language of the entire public act, however, clearly establishes the right of a person to give or to withhold his informed consent with respect to such treatment.
 

 Public Acts 1993, No. 93-369, provides: “No patient shall receive medication for the treatment of the mental illness of such patient without the informed consent of such patient . . . .” Public Acts 1993, No. 93-369, § 3
 
 *60
 
 provides in relevant part: “No patient . . . shall be deprived of any personal, property or civil rights . . . unless he has been declared incompetent pursuant to sections 45a-644 to 45a-662, inclusive.
 
 Any finding of incompetency shall specifically state which civil or personal rights the patient is incompetent to exercise.
 
 ” (Emphasis added.)
 

 Recent United States Supreme Court cases have indicated that a strong due process safeguard surrounds the right not to have one’s body invaded by unwanted administration of psychotropic medication in the absence of a finding of overriding justification and medical appropriateness.
 
 Riggins
 
 v.
 
 Nevada,
 
 504 U.S. 127, 135-36, 112 S. Ct. 1810, 118 L. Ed. 2d 479 (1992);
 
 Washington
 
 v.
 
 Harper,
 
 494 U.S. 210, 222-23, 110 S. Ct. 1028, 108 L. Ed. 2d 178 (1990).
 

 The legislative history behind Public Acts 1993, No. 93-369, demonstrates a clear intention to bring due process protection against involuntary psychotropic medication to mental patients in the light of these Supreme Court decisions. As Kenneth Marcus, the deputy commissioner of the state department of mental health, indicated: “Current law . . . provides that a person who has been involuntarily committed can be medicated against his/her will. The United States Supreme Court . . . has ruled that such statutes which unilaterally allow a state to medicate a person against his/her will are unconstitutional. H.B. 7288 . . . brings Connecticut law into compliance with U.S. Supreme Court rulings
 
 (Washington
 
 v.
 
 Harper and Riggins
 
 v. Nevada) on involuntary medication and it provides due process protections for patients . . . .” Conn. Joint Standing Committee Hearings, Judiciary, Pt. 9,1993 Sess., p. 3018.
 

 For the aforementioned reasons, the court concludes that Public Acts 1993, No. 93-369, permits a patient objecting to medication for a mental illness to have a
 
 *61
 
 determination by the Probate Court of his ability to give informed consent in a procedure not instituted under § 17a-543.
 

 The defendants are therefore restrained from medicating the plaintiff until he consents or has had a duly noticed hearing in the Probate Court resulting in a finding that he is unable to give informed consent to medications for mental illness and that his conservator has submitted a writing that indicates he has followed the procedures set forth in the new subsection (e) of § 17a-543, listing the steps taken, and stating that after consideration of the information received, the conservator consents to the plaintiff receiving such medication.
 

 Nothing in this restraining order should be interpreted to interfere with the right of the defendants to administer medications in emergency situations under § 17a-543 (b) or in rapidly deteriorating situations under § 17a-543 (d) or in direct threat of harm situations under § 17a-543 (f).